IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

ANDREW F.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 4:19-cv-04194-SLD-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 10), the Commissioner's Motion for Summary Affirmance (Doc. 12), and the Plaintiff's Reply (Doc. 13). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be denied and the Defendant's Motion for Summary Affirmance be granted.[1]

**I**

Plaintiff Andrew F. filed a Title II application for disability insurance benefits (DIB) on October 27, 2015, alleging disability beginning on July 9, 2013. His claim was denied initially on December 22, 2015 and upon reconsideration on March 23, 2016. Andrew filed a request for hearing concerning his DIB application which was held on June 29, 2018 before the Honorable Deborah M. Giesen (ALJ). At the video hearing, Andrew was represented by an attorney, and Andrew and a vocational expert (VE) testified. Following the hearing, Andrew's DIB claim was

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 7) on the docket.

1

denied on July 25, 2018. His request for review by the Appeals Council was denied on August 15, 2019. Andrew timely filed the instant civil action seeking review of the ALJ's Decision on October 4, 2019.

## II

At the June 2018 hearing, Andrew was 51 years old and lived with his fiancée. He claimed the following conditions limited his ability to work: back surgery; rheumatoid arthritis; psoriasis; and sclerosis of the liver. AR 226. In July 2013, Andrew was sitting on a fork truck at work when another operator ran into the fork truck which caused injury to Andrew's lower and upper back. Andrew received workmen's compensation and a lump sum settlement from his employer as a result of the incident.

Andrew testified that he had a driver's license and drove, though sitting too long caused him to shake and caused his back to hurt. He said standing too long similarly caused him to shake and lose his balance. He described the shaking as his nerves tightening up in the lower part of his back – a "tremor" he felt in his whole upper body. AR 42. Andrew also testified that he had trouble doing basic household chores including sweeping, taking out the garbage, bringing the groceries in, and doing yard work; he had to take his time to do those activities and he got help from his fiancée while doing chores. He said he laid down four to five times a day and if he did not do so, he had "really bad" tremors. AR 47. Andrew testified he could walk for 15 minutes "at the most" at one time, could sit for "maybe" 20-25 minutes at one time, and he guessed he would change positions between sitting, standing, and walking every 10-15 minutes. AR 46. Upon questioning by his attorney, Andrew answered that his inability to sit for long periods of time would interfere with a job where he could sit down all day. He answered, "Yes, ma'am" to the question of whether he thought pain would make it hard for him to focus on what he was supposed to be doing. AR 48.

The ALJ then questioned the VE, asking whether the VE was familiar with the vocational terms and definitions in the regulations. The VE answered in the affirmative. Andrew's counsel answered she had "[n]o objections" to the VE serving as the VE in this matter. AR 51. The ALJ presented the VE with the following hypothetical individual:

> [A]n individual 46 years at onset date, 50 at [date last insured], currently 51 years of age with a high school education. Past work is just as described as a forklift operator who has the capacity for light work as defined in the regulations with no work around unprotected heights, open flames or dangerous moving machinery.
> No climb ladders, ropes, and scaffolds. Occasional climb ramps and stairs, balance, stoop, kneel, crouch, crawl. No concentrated exposure to extremes of cold.

AR 52. The VE testified the individual would be unable to perform Andrew's past work but there were jobs at the light, unskilled level that the individual could perform: laundry folder, cafeteria attendant, and housekeeping cleaner. The jobs of laundry folder, labeler, and mail clerk would allow for an opportunity to change positions between standing and sitting every hour.

### III

The ALJ determined at Step Two that Andrew had the following severe impairments: spondylolisthesis of L5 on S1 with annular tear and foraminal stenosis status post surgery; cervical spine bilateral disc osteophyte at C4 to C5 and C6 to C7; and psoriatic arthritis. AR 15. At Step Three, the ALJ considered whether Andrew's spinal impairment met or equaled the relevant listing. She determined it did not where, among other things, Andrew did not have the inability to ambulate effectively, specifically noting he had not been prescribed nor used an assistive device. The ALJ made the following residual functional capacity (RFC) finding:

3

> [T]hrough the date last insured [of March 31, 2017], the claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except: no work around unprotected heights, open flames, or dangerous moving machinery; no climbing ladders, ropes, or scaffolds; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no concentrated exposure to extremes of cold; and the ability to change positions from standing and sitting every hour.

AR 17. The ALJ considered Andrew's reports that his back fusion caused limitations in lifting, standing, sitting, bending, kneeling, and reaching, he could occasionally lift 30 to 35 pounds, and he was limited in the length of time he could walk, stand, and sit. She then turned to the record medical evidence dated between July 2013 (the forklift collision at work) and February 2017. A cervical spine MRI revealed some cervical canal stenosis at C4 to C5 and a lumbar spine MRI revealed an annular tear in the right lateral recess with some moderate right foraminal stenosis and mild left sided foraminal stenosis. Further, the medical evidence provided Andrew had normal/intact sensation, had tenderness in the lumbar and cervical spine, and had some loss of lumbar movement due to back fusion but otherwise had good movement in the hips. He was treated with steroid injections, medications, physical therapy, and an anterior lumbar interbody fusion at L5 to S1.

Next, the ALJ considered the opinion evidence. State Agency doctors opined Andrew was capable of light work with certain postural and environmental limitations. Andrew's physician Naomi Chelli, M.D. opined in July 2013 that Andrew should not lift over 10 pounds, bend more than twice per hour, push or pull over twenty pounds of force, or drive a company vehicle. In September, Dr. Chelli opined Andrew should not lift over 15 pounds, push or pull more than 25 pounds of force, or drive a company vehicle. Andrew's physician Michael Berry, M.D. opined in October 2014 that Andrew should remain off work

for an additional six weeks, opined in November 2014 that Andrew could potentially get back to work with some very specific restrictions, and opined in April 2015 that Andrew could return to work limited to, among other things, occasional walking. In May 2016, physical therapist Benjamin Jobgen assessed Andrew able to frequently reach overhead, occasionally walk, kneel, and climb stairs, occasionally carry 35 pounds, never stoop, and could return to work at medium duty. Third party vocational rehabilitation specialist James Ragains opined Andrew's work restrictions precluded sedentary or light work and would require a new employer willing to provide for a reasonable accommodation, and he further opined that, overall, Andrew was not employable. In October 2016, independent medical examiner Mark Taylor, M.D. opined to restrictions similar to those assessed by Dr. Berry and further recommended that Andrew have the ability to alternate between sitting, standing, and walking as needed for comfort.

IV

Andrew argues: the ALJ's assessment of subjective complaints was patently wrong; and the ALJ erred when assessing Andrew's RFC.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind

might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

6

> 5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id*. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Andrew claims error on the ALJ's part at step four.

## A

Andrew first argues the ALJ erred in assessing his subjective symptoms of pain, weakness, instability, and tremors as well as his lumbar symptoms. He says the ALJ also failed to properly consider his nonexertional impairments such as distraction due to pain. The Commissioner argues that the ALJ reasonably considered Andrew's subjective symptoms where she considered the relevant regulatory factors and the objective medical evidence.

### 1

SSR 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms and also the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other

symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. SSR 16-3p, at *7-8.

With regard to the objective medical evidence, the ALJ considered that between July 2013 and February 2017, medical records indicated lumbar and cervical spine findings, limited cervical and lumbar spine range of motion with tenderness, limited and painful lumbar extension, decreased lumbar movement and some tenderness, slow gait cadence, a bit of a limp upon walking, a limping gait, and ambulation with a mildly forward flexed posture,. The medical records also revealed normal sensation and negative straight leg raising immediately following the fork truck collision in July 2013, intact sensation and good range of motion of the upper extremities in August 2013, negative straight leg raising and intact sensation in September 2013, minimal pain to palpation of the lumbar spine with full strength in June 2014, full strength and intact sensation in November 2014, full sensory and motor function in February and March 2015, normal gait, good movement in the hips and no definite swelling or inflammation in the joints in February 2016, and Andrew was able to heel and toe walk and squat in October 2016.

With regard to the Section 404.1529(c) factors, the ALJ discussed the several medications Andrew took and that he complained of no side effects, the physical therapy attended, and the trigger point and epidural steroid injections he received. Further, the ALJ detailed that Andrew underwent an anterior lumbar interbody fusion at L5 to S1, reduction of spondylolistheses at L5 to S1, and pedicle screw instrumentation bilaterally at L5 to S1 in August 2014, and that an April 2015 x-ray of the lumbar spine revealed no interval change in alignment, a solid arthrodesis at L5 to S1 anteriorly, and pedicle screw instrumentation remained in anatomic position. As for Andrew's alleged tremors, the ALJ directly addressed Andrew's testimony in that regard and explained that there was no evidence in

the record which supported that allegation; specifically, there was no evidence that he reported tremors or that his physicians observed tremors during examinations.[2]

The undersigned finds that the ALJ's subjective symptom evaluation was not patently wrong. First, the foregoing makes obvious that the ALJ did not ignore contrary evidence as to Andrew's lumbar impairment where the ALJ addressed evidence of normal examinations as well as examinations which showed limitation in range of motion and the fact that Andrew continued to pursue treatment for his lumbar impairment. *See Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (stating that "an ALJ may not ignore evidence that undercuts [his] conclusion"). Second, the ALJ built a logical bridge between the evidence and her conclusion that Andrew was not so limited by his lumbar symptoms as to preclude the walking involved in light work: the ALJ amply addressed the evidence of Andrew's physical lumbar limitation as evaluated by his physicians (see *supra*); and the ALJ articulated that Andrew's statements that he could only walk 15 minutes and medical opinions which limited him to occasional walking were unsupported by the evidence of record which showed he "generally had a normal gait, and could heel and toe walk." AR 19, AR 20. The ALJ also articulated that Andrew's exhibited moderate pain behaviors, limited range of motion and pain of the lumbar spine, and a limping gait were "consistent with the reduced light [RFC] assessed in this decision during the period of adjudication." AR 19. The ALJ explained that whereas the State Agency doctors' assessment of light exertion was consistent with the medical evidence, other opinions which limited Andrew to less

---

[2] In his brief, Andrew merely cites to his subjective statements about tremors due to the pain in his lower back. His argument in this regard amounts to nothing more than a request for the Court to reweigh the evidence and decide the question of credibility. The Court cannot do so. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (explaining that in reviewing an ALJ's decision, the court cannot reweigh evidence, resolve conflicts in the record, decide questions of credibility, or otherwise substitute its own judgment for that of the Commissioner)

than the lifting involved in light work and which provided he could not be considered for sedentary or light work were unsupported by that same medical evidence of physical examinations which demonstrated negative straight leg raises, normal strength, and intact sensation. It is of no moment that the ALJ did not expressly mention Andrew's complaints to doctors of weakness and instability at certain times or expressly consider his distraction due to pain. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("an ALJ need not mention every piece of evidence, so long he builds a logical bridge from the evidence to his conclusion"). Indeed, "an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence." *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011). The ALJ's express consideration of Andrew's Dupuytren's contracture belies the latter's argument that the ALJ failed to properly consider Andrew's subjective complaints.[3] Because the ALJ's subjective symptom evaluation included both explanation and support in the record, that evaluation was not patently wrong. *See Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) ("So long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn his credibility determination unless it is patently wrong").

**2**

As part of his attack on the ALJ's subjective symptom evaluation, Andrew says it is unclear whether the VE understood the amount of standing, walking, sitting, lifting, or carrying based on the ALJ's question "since the definition of light work could include more lifting and less walking and standing or vice versa." Plf's

---

[3] The ALJ determined the contracture of Andrew's fifth finger of his non-dominant right hand a nonsevere impairment given examination findings showing normal extremities, no synovitis of the hands, and "no further evidence of record demonstrating abnormal objective findings, diagnoses, treatment, or more than minimal limitations in the claimant's ability to perform work-related activities with regard to this impairment." AR 16. *See* DORLANDS.COM, https://www.dorlands.com/dorlands/def.jsp?id=100105060 (last visited Nov. 3, 2020) (defining synovitis as inflammation of a synovium (membrane)).

10

MSJ (Doc. 10-1 at pg. 9). He essentially argues that the RFC the ALJ provided the VE should have explicitly referred to the specific parts of the definition of light work the ALJ intended so as to assure the reviewing court that the VE's testimony constitutes substantial evidence of the jobs Andrew could do. The undersigned agrees with the Commissioner in this regard; understanding the definition of "light work" is part of the VE's job. Notably, here, the ALJ and VE engaged in the following colloquy:

> Q. Are you familiar with the vocational terms and definitions in the regulations? Sedentary, light, medium heavy, very heavy work, unskilled, semi-skilled, skilled?
>
> A. Yes.

AR 51. As a matter of common sense, the ALJ's failure to explicitly provide the full definition of "light work" to the VE does not amount to reversible error. Indeed, as the Commissioner says, Andrew's argument would require reversal of virtually every disability case because the hypothetical questions posed to the VEs do not typically provide the full definition of "light work," "medium work," etcetera.

## B

While Andrew attempts to make a separate argument that the ALJ erred in assessing his RFC, he makes no real substantive argument different from that pertaining to the ALJ's subjective symptom evaluation. Because the undersigned as already determined the ALJ made no reversible error in her subjective symptom evaluation, Andrew's argument as to the RFC finding fails as well. For the sake of completeness, the undersigned finds that in addition to the proper consideration of the objective medical evidence and subjective symptoms, the ALJ properly considered the medical opinions of record.

As for the State Agency doctors' opinions, the ALJ gave the opinions "great weight" where they were consistent with the overall evidence of record, their assessment to avoid hazards was supported by radiological evidence indicating degenerative changes in the lumbar spine, the light exertional level was consistent with physical examinations, and treatment notes indicated Andrew generally had a normal gait and could heel and toe walk.  As for Dr. Chelli's July and September 2013 opinions, the ALJ gave them "little weight" where they pertained to the period of time immediately following Andrew's initial injury, and they were not supported by evidence demonstrating negative straight leg raises, normal strength, and intact sensation.  As for Dr. Berry's opinions in November 2014 and April 2015, the ALJ gave those opinions "little weight" where they pertained to a limited period of time during the overall period of adjudication and were vague, and his assessment of occasional walking was not supported by the evidence demonstrating Andrew's generally normal gait and ability to heel and toe walk.  As for physical therapist Jobgen's March 2015 opinion, the ALJ gave it "little weight" because it was internally inconsistent; Jobgen assessed Andrew with the ability to only occasionally walk and carry thirty-five pounds but also noted Andrew could perform medium duty work.  It was also inconsistent with treatment notes.  The ALJ further noted Jobgen was not an acceptable medical source.  As for third-party vocational rehabilitation specialist Ragains' opinion, the ALJ gave it "little weight" because it was not consistent with the overall evidence.  Again, the ALJ noted Ragains was not an acceptable medical source.  As for independent medical examiner Dr. Taylor's opinion, the ALJ gave it "partial weight" because it was partially consistent with the overall evidence of record though, significantly, his assessment that Andrew could lift thirty pounds at waist level was not supported by radiological evidence indicating degenerative changes

of the lumbar spine. Those changes, however, were consistent with Dr. Taylor's assessment of the ability to alternate positions.

The ALJ succinctly identified the evidence she relied upon in support of her conclusions as to the weight due each opinion. Her discussion of the record evidence earlier in her Decision was without fault, and so provided substantial support for those conclusions. Most importantly, the Court can see how the various limitations opined to and of which Andrew complained (which the ALJ determined were actually supported by the record) made their way into the RFC determination.

Because the ALJ properly considered the entirety of the record evidence and in doing so made it easy for the Court to trace the path of her reasoning to the conclusion that Andrew remained capable of light work with additional limitations, Andrew's remaining argument fails. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). Andrew contends that the ALJ erred in assessing the evidence that supported a sedentary RFC.[4] Andrew's Grids argument is premised upon his position that the ALJ's analysis cherry picked the record and misconstrued the evidence in this case. The undersigned has already determined, however, that the ALJ made no error in her consideration of Andrew's subjective statements as to his symptoms. The ALJ also

---

[4] This is Andrew's clarification he provided in his Reply (Doc. 13) of his "Grids" argument. The Commissioner (the undersigned, too) understood Andrew's opening brief to argue that Andrew would simply "grid out" if unable to do the full range of light work. The Court agrees with the Commissioner that such an argument was mistaken as the grid rules do not direct a decision where a claimant is assessed with an RFC between light and sedentary because the grid rules apply only when the RFC is for a full range of work at a particular exertional level. *See* 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App'x 2, § 2.00, § 2.01 and Table Nos. 1 and 2; SSR 83-12 at *2-3 (explaining that VE assistance is advisable where the rules would direct different conclusions and the individual's exertional limitations are "somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work").

did not cherry pick the record where she expressly considered the mixed bag of objective medical evidence and medical opinions, as detailed *supra*. The ALJ did not err in assessing the evidence supportive of a limitation to sedentary work simply because she determined it was outweighed by the evidence supportive of a limitation to light work with additional restrictions.

Substantial evidence supports the ALJ's Decision and the Decision is without legal error.

### V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 10) be denied; 2) the Defendant's Motion for Summary Affirmance (Doc. 12) be granted; 3) The Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Andrew Saul, Commissioner of Social Security, denying benefits to the Plaintiff, Andrew F., is AFFIRMED."; and 4) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on November 3, 2020.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE